550

## HARTFORD ACCIDENT & INDEMNITY CO. v. BRILL.

### Civil Action No. 548.

District Court, E. D. Wisconsin.

June 23, 1942.

La France & Edwards, of Racine, Wis., and Dougherty, Arnold & Kivett, of Milwaukee, Wis., for plaintiff insurance company.

Wilbershide & Baumblatt and Shovers & Shovers, all of Racine, Wis., for defendant Max Brill.

DUFFY, District Judge.

The plaintiff seeks a declaratory judgment that it was not on the risk covering the premises at 924 Park Avenue, Racine, Wisconsin, on January 21, 1941. The defendant claims that a valid contract of oral insurance was in full force and effect.

The trial developed a sharp conflict of testimony as to just what occurred between the parties, especially on January 21, 1941. I find the following facts:

In December, 1940, defendant Max Brill was the owner of a number of residence properties in Racine, Wisconsin. His nephew, George Brill, was an insurance broker who customarily placed his casualty business with the insurance firm of Fagan-Newell-McQueen Company (hereinafter referred to as "insurance agency"), which was the general insurance agency in Wisconsin for the Hartford Accident and Indemnity Company.

Because of an inquiry which he had received from a tenant, Max Brill asked George Brill whether his fire and tornado policies covered injuries to tenants. George Brill advised him that they did not, but said that there was a form of policy which would cover any such injuries, but that he could not tell him the amount of premium required. After a conference at the insurance agency, George informed Max Brill he would have to have a list showing the addresses of the various properties. He obtained and turned over such a list to the insurance agency. Mr. McQueen of the insurance agency informed George Brill that it would be necessary for him to send the list to the Chicago office of the insurance company; that an engineer representing the insurance company would inspect the properties; and that thereafter the insurance agency would be advised as to the amount of the premium. However, McQueen informed George Brill that in the meantime the properties of Max Brill would be covered with a binder.

On December 17, 1940, the insurance agency forwarded by letter to the insurance company, the list of Max Brill's properties, advising that an owner, landlord, and tenant insurance policy with $5,000—$10,000 limits was desired. In a postscript, the insurance company was informed that the agency was issuing a binder on the risk, by the use of the following language: "P.S. We are covering the properties under binder as of today with limits of $5/10,000.00." It may be noted that there was no time limit stated. George Brill then informed his uncle as to what

had occurred, and that the properties in question were covered by the binder.

Between Christmas, 1940, and New Year's Day, the engineer for the insurance company came to Racine and inspected the various properties. He conferred with Max Brill and suggested the installation of railings at two properties, and Max Brill agreed to install same.

By letter of January 7, 1941, the insurance company informed the insurance agency as to the amount of the premium, which information Mr. McQueen gave to George Brill on January 10, and George Brill told McQueen that he would confer with his uncle. McQueen made a notation in pencil on the letter which he had received from the insurance company to the effect that George would let him know about the policy. On January 21, 1941, George talked to his uncle about the policy, giving him the amount of the premium. Max Brill agreed to take the policy, and about 1:00 P.M. George called the insurance agency office and ordered the policy. McQueen agreed that the policy would be issued. At about 2:00 P.M. John Rizzo was injured at the premises owned by Max Brill located at 924 Park Avenue. This was one of the properties contained in the list submitted to the insurance agency and to the insurance company. Some time later, Rizzo was removed to the hospital by ambulance, arriving there at 3:30 P.M. George Brill came to the insurance agency office about 4:00 P.M. in order to report the accident. He asked for his uncle's insurance policy and was informed by Mr. McQueen that he had forgotten to tell his stenographer to issue it. George Brill then reported the accident. Later a tender in cash was made of the amount of the premium, but this was not accepted. No written policy of insurance was ever issued.

██ An oral contract of insurance may be enforced. Neuberger v. Aid Ass'n for Lutherans, 207 Wis. 133, 240 N.W. 885; Carlson v. Grimsrud, 223 Wis. 561, 270 N.W. 50; Halvorsen v. Peterson, 229 Wis. 221, 282 N.W. 60. The binder here issued had no fixed time for its termination, and therefore continued in effect for a reasonable time. 32 C.J., p. 1101. The insurance agency received the information on January 8, 1941. When Mr. McQueen talked with George Brill on January 10, he expressly agreed to wait a further period, as is shown by his notation on the letter from the insurance company. Under the circumstances, the delay until January 21 cannot be considered unreasonable. It would have been a simple matter for the agency to have terminated the binder had they chosen to do so.

██ But even if the coverage afforded by the binder had terminated because of the interval which elapsed, a valid policy was in force when George Brill ordered the policy at one o'clock P.M. on January 21. This order was given prior to the time of the Rizzo accident, and was accepted by McQueen. According to the established custom, such policy came into effect at twelve o'clock noon on January 21, 1941.

As the insurance company was, in my opinion, on the risk at the time in question, the judgment to be entered herein may provide that the plaintiff insurance company, by reason of an oral contract of insurance, covered the defendant Max Brill with an owner, landlord and tenant policy affecting the premises located at 924 Park Avenue, Racine, Wisconsin, at the time John Rizzo was injured.